No. 29,008.

J. S. Lerner and Edgar A. Frowerk, *Appellants,* v. Florence I. Darby et al., as Trustees, etc., *Appellees.*

(283 Pac. 497.)

Opinion filed January 11, 1930.

*J. O. Emerson* and *David J. Smith,* both of Kansas City, for the appellants.

*William L. Wood* and *James T. Cochran,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one to obtain a decree that successors in interest of a deceased lessor of city lots, who bought in a long-time lease of the lots, held the lease in trust for plaintiffs; and to obtain a decree for conveyance of the leasehold by the purchasers to plaintiffs. A demurrer was sustained to the petition, and plaintiffs appeal.

In 1921 I. Harry Darby made a 99-year lease of lots in Kansas City, which he owned, to Ralph W. Hoffman. Ralph W. Hoffman assigned the lease to Thad L. Hoffman. On August 27, 1928, Thad L. Hoffman executed and delivered to plaintiffs the following instrument:

"Received of J. S. Lerner and E. A. Frowerk, partners of the Vogue Hosiery Shop, check for $2,750, as part payment on purchase price of the lease to the Holmes building, 710 Minnesota avenue, Kansas City, Kansas, which said

lease I have sold to said Lerner and Frowerk for the total purchase price of $27,500, subject, however, to my being able to obtain from I. Harry Darby estate consent to the assignment of said lease, in writing, to said Lerner and Frowerk, the balance of the purchase price of $24,750 to be paid, $7,250 in cash, $5,000 per year for three years, and $2,500 four years from the date of assignment, with interest on the deferred payments at the rate of six per cent per annum.

"I am to assign the lease recorded in book No. 628, page 443, registrar of deeds, Wyandotte county, Kansas, subject, however, as above stated, to the consent of the Darby estate to such assignment."

The lessor died in 1923, leaving a will. His widow, Florence I. Darby, and his son, I. Harry Darby, Jr., were appointed executors and trustees under the will. The whole of the testator's estate was given to the trustees to manage and control for ten years, when distribution was to be made to the widow, the son, and two daughters, who were all the heirs of the testator.

The trustees refused to consent to an assignment of the lease. The heirs of the lessor, who were all of age, paid Hoffman $27,500 in cash for a formal release, satisfaction and discharge of the lease. Florence I. Darby and I. Harry Darby, Jr., as trustees, joined with the heirs in the release and discharge of Hoffman from his obligations under the lease, and he covenanted he had not sold, assigned, transferred, or hypothecated the lease.

The lease contained the following provision relating to assignment:

"21. The lessee may sell or assign his interest in said leased premises and the improvements thereon, but only to some responsible party or parties, provided that all rents, taxes, assessments, liens, insurance, and other charges of every kind, which lessee has covenanted to pay, shall be fully paid to the date of such assignment, and all covenants and agreements contained in this indenture to be kept and performed by the lessee shall be fully complied with up to the date of such assignment; provided further, that in no event shall the interest of the lessee in the leased premises and the improvements thereon be assigned otherwise than by an instrument fully executed and acknowledged wherein the assignee shall expressly assume all the obligations and engagements of the lessee under this lease, nor unless there shall be placed in the hands of the lessor or delivered to the party then authorized to receive the rent for the lessor, not less than ten days before the transfer is to be made, the form of the instrument of assignment and the form of acceptance of the assignee; . . . Any assignment, except by devise or descent; or by operation of the law, not made as herein required to be made, shall, if the lessor so elect, be null and void. . . . Provided, however, that no assignment of this lease shall be valid unless made to a responsible party or parties and which does not fully bind the assignee, its or his successors, heirs or assigns to perform each and every one of the obligations of the original lessee herein,

and until the assignee is so bound, the original lessee shall remain bound to perform all of his obligations hereunder, notwithstanding such assignment. Written consent by the lessor to the assignment shall be deemed to be a satisfaction of the requirements of responsibility hereunder."

As indicated, plaintiffs procured their contract for an assignment of the lease on August 27. On August 28 the trustees were notified of the contract to assign, and plaintiffs requested the trustees to consent in writing to assignment by Hoffman. On the same day plaintiffs presented to the trustees a copy of the proposed form of assignment, which was the same, except as to names, as the assignment from Ralph W. Hoffman to Thad L. Hoffman. On August 31 the trustees refused to consent to an assignment of the lease by Hoffman, and offered to purchase the lease themselves for $27,500. On September 1 the trustees told Hoffman they absolutely refused to consent to the proposed assignment of the lease to plaintiffs. The trustees freely admitted that plaintiffs were responsible persons; and gave as their reason for withholding consent the fact that they desired the property for themselves. Hoffman said he wished to carry out his agreement with plaintiffs, and would prefer to do so. On September 4 Hoffman accepted $27,500 in cash from the Darby heirs, and released to them, "being willing," the petition says, "that plaintiffs should be deprived of the benefit of their contract with him." There was no allegation that Hoffman did not endeavor to obtain consent of the trustees to the assignment.

The petition contained the following:

"Afterward and on or about the 31st day of August, 1928, the defendants, by themselves and by and through I. Harry Darby, Jr., duly authorized to act for the rest of the defendants in that behalf, wrongfully and maliciously intending, contriving, and conspiring to interfere with and prevent the carrying out of the said agreement between the plaintiffs and Thad L. Hoffman, and to secure the benefits thereof for the defendants, and well knowing and admitting that the plaintiffs were responsible parties capable of paying the rents and performing all the covenants on the part of the lessees in the said lease contained in bad faith refused to consent to any assignment of the said lease from Thad L. Hoffman to the plaintiffs, and offered to purchase the said lease themselves for the sum of $27,500, and requested and demanded of the said Thad L. Hoffman that he, the said Thad L. Hoffman, convey and release all his interest under the said lease to the defendants, for the use and benefit of the defendants themselves."

The foregoing states the material portions of the petition. Referring to the vituperative paragraph just quoted, it may be observed that malice would not make defendants' conduct any worse in law

or equity than it would be if just intentionally wrongful, and the epithet "maliciously" added nothing to plaintiffs' cause of action. It is not stated that defendants conspired with anybody, and the word "conspiring" must be put in the same category with the mental acts of intending and contriving. No specific facts showing breach of faith with anybody were pleaded, and the words "bad faith" merely indicate evil mental attitude. Wrongful invasion of plaintiffs' interest must be found, if at all, in the conduct of the trustees, intentionally manifested under known circumstances. The statement that plaintiffs "demanded" a conveyance of Hoffman does not charge coercion or intimidation of Hoffman. The result is, the substance of the cause of action was this: Plaintiffs, who were qualified persons to receive an assignment, entered into a conditional contract with Hoffman for an assignment of the lease. The condition was that Hoffman should be able to obtain consent of the trustees in writing. The trustees refused to consent, and based their refusal on desire to further their own interests. The trustees having refused to consent to an assignment of the lease by Hoffman to plaintiffs, Hoffman sold the lease to the Darby heirs, the trustees participating, for a cash consideration equal to the price plaintiffs were to pay in installments.

The lease did not make consent of the lessor a factor of effective assignment, or empower the lessor to defeat an otherwise effective assignment by withholding consent. The lease was a long-time lease, and was assignable. For an assignment to be effective it was necessary that the assignee should be responsible; that the assignor should not be in default; that certain formalities should be observed —writing, execution, acknowledgment, etc.; that the instrument of assignment should contain specified covenants; and that the lessor should have ten days' time before change of possession in which to inspect the instrument, see if it were correct in form and content, and ascertain if the assignee were responsible. If those requirements were fulfilled the lessor's consent to an assignment was not necessary, and his refusal to consent would not render assignment ineffective. The requirement of an assignee responsible in character, credit, and substance, could be satisfied, without more, by written consent of the lessor to the assignment; but the lessor rested under no contract duty to a proposed assignee, nor to anybody else, to express consent in writing or otherwise.

Hoffman did not assign his lease to plaintiffs. He did not agree

outright that he would assign his lease to plaintiffs. He agreed that he would assign his lease to plaintiffs provided he was able to do something else. He was owner of the leasehold. He could attach any condition he saw fit, trifling or momentous, to his parting with the leasehold. All plaintiffs got from him was an agreement which, going outside the terms of the lease, made his performance depend on whether he could get a third person to do something. The third person was the lessor. But the situation was the same as if the agreement had provided that assignment was subject to Hoffman's being able to obtain the consent in writing of his wife, or his partner in business, or his banker, and the lessor was as free to consent or to withhold consent as any one of those persons would have been.

Plaintiffs contend the trustees acted wrongfully because they based refusal to consent on the fact they desired to extinguish the lease for their own benefit. The refusal could not be wrongful unless the trustees owed a duty to plaintiffs to consent in writing to the assignment, and no such duty existed.

Plaintiffs contend the trustees occupied a fiduciary relation to plaintiffs. The contention is based on the fact that the lease required the form of assignment to be submitted to the lessor, and compliance with the requirement necessarily informed the lessor of the contemplated assignment. Therefore, it is said, the lessor could not use the information to prevent assignment and to make a profit for himself. The answer to the contention is, plaintiffs were riding ahead of the hounds. They pleaded that the day after they contracted with Hoffman they requested the trustees to consent to assignment of the lease. That was Hoffman's business. They pleaded they placed in the hands of the trustees a proposed form of assignment. They had no form of assignment binding on Hoffman to show to the trustees. Plaintiffs' contract with Hoffman required him to bring the subject of the proposed assignment to the attention of the trustees. Therefore, whoever spoke first to the trustees, plaintiffs and not the trustees were responsible for disclosure of the fact that the leasehold was for sale.

Plaintiffs' rights were measured, not by the lease, under which they hastened to act, but by their contract with Hoffman. That contract gave them no standing as assignees unless and until Hoffman procured consent of the trustees to an assignment. Plaintiffs had no claim to favorable consideration by the trustees and,

being privileged to do so, the trustees flatly refused to consent. That ended Hoffman's obligation to assign to plaintiffs, and the trustees were at liberty to purchase from Hoffman without becoming trustees *ex maleficio* for plaintiffs.

Plaintiffs contend the trustees wrongfully interfered with a contract relation between plaintiffs and Hoffman. As indicated, the trustees violated no duty to plaintiffs by refusing to consent, and the act of refusing was in fulfillment and not in breach of the contract relation. It settled the question left open by the contract, whether Hoffman would assign.

As indicated realization by plaintiffs on their contract with Hoffman was, by virtue of their own act, the contract itself, dependent on action of the trustees. Because of the manner in which decision came up to them, the trustees were unfettered by any obligation, cognizable by law or equity, to act for the benefit of plaintiffs, and thereby defeat their own reasonable desire to get rid of what they regarded as a burdensome lease. Other subjects debated in the briefs do not require formal discussion.

The judgment of the district court is affirmed.

JOCHEMS, J., not participating.